**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LEE OLGUIN,

Plaintiff,

v.

J. GASTELO *et al.*,

Defendants.

Case No. 2:20-cv-06048-PA (MAA)

**MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

## I. INTRODUCTION

On July 6, 2020, Plaintiff Lee Olguin ("Plaintiff"), a state inmate proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.) That same day, Plaintiff filed a Request to Proceed *In Forma Pauperis* (ECF No. 2), which the Court granted on July 8, 2020 (ECF No. 4). The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff is **ORDERED** to, within sixty days after the date of this Order, either: (1) file a First Amended Complaint; or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a First Amended Complaint.

## II. SUMMARY OF ALLEGATIONS IN COMPLAINT[1]

The Complaint is filed against: (1) Correctional Officer Day (individual capacity); (2) Correctional Officer Cable (individual capacity); (3) Correctional Sergeant R. Siordia (individual capacity); and (4) Warden J. Gastelo (individual capacity) (each a "Defendant" and collectively, "Defendants"). (Compl., at 3.)[2]

On February 24, 2019, Plaintiff was approached by two correctional officers at his cell "to step out and cuff up"; Plaintiff did as instructed without hesitation. (*Id*., at 4.) Plaintiff was escorted to the program office. (*Id*.) In response to Plaintiff's queries, Defendant Day explained that officers had been notified that Plaintiff had a confidential enemy on the yard, and Plaintiff was going to "ad seg" pending investigation. (*Id*.)

Plaintiff asked to speak to a Sergeant. (*Id*., at 5.) Plaintiff was told to "shut up" and his face was slammed against the wall outside the program office. (*Id*.) As Plaintiff tried to cry out for help, his arms—which were in handcuffs behind his back—were pushed all the way up behind him. (*Id*.) Commands were shouted at Plaintiff to stay on the wall as his thumb was pulled back into a restraint hold. (*Id*.) Plaintiff did not resist or "put up a fight." (*Id*.) Plaintiff felt his thumb crack under the pressure applied to his wrist, and Plaintiff's thumb snapped. (*Id*.) Plaintiff yelled, "You're hurting me, [sic] please God stop!" (*Id*.) Plaintiff was taken to the ground where he became unconscious from the pain. (*Id*., at 6.)

Defendant Cable woke Plaintiff up by jumping on Plaintiff's back and putting his knee on Plaintiff's shoulder. (*Id*.) This caused Plaintiff "extreme pain" and made a "very big" dark purple bruise on Plaintiff's left shoulder. (*Id*.)

---

[1] The Court summarizes the allegations and claims in the Complaint. In doing so, the Court does not opine on the veracity or merit of Plaintiff's allegations and claims, nor does the Court make any findings of fact.

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

Plaintiff was taken inside the program office where he was monitored with a video camera. (*Id.*) Plaintiff was asked a lot of questions, not fully aware that he was being interviewed. (*Id.*) Plaintiff cried "with extreme emotion" that they used unnecessary force on him while his hands were cuffed behind his back. (*Id.*) Plaintiff "yelled and screamed" because he knew his thumb was broken. (*Id.*)

Defendant Siordia approached Plaintiff and told him to sign a chrono to say that nothing happened. (*Id.*, at 6–7.) Defendant Siordia tried to "extort" Plaintiff into silence by threats of another beating. (*Id.*, at 7.) Plaintiff complied. (*Id.*)

Plaintiff was taken to medical, where it was confirmed that Plaintiff's thumb was broken in half. (*Id.*) Plaintiff was taken to the hospital, where he underwent surgery; a plate and metal pins were placed in Plaintiff's hand to surgically repair his thumb. (*Id.*) Plaintiff's thumb no longer bends. (*Id.*)

On February 26, 2019, Plaintiff filed a "602" grievance regarding the incident of excessive force. (*Id.*) Defendant Siordia made threats of additional and excessive time in "ad seg" and conducted frequent pat downs and cell searches of Plaintiff. (*Id.*, at 7–8.) Plaintiff was singled out in a "silent code" among correctional officers against Plaintiff for engaging in his First Amendment right to petition. (*Id.*, at 8.)

It was the policy and practice of Defendant Gastelo to employ certain correctional officers, including Defendants Day, Cable, and Siordia, to cover up the use of excessive force. (*Id.*, at 10.) It was the policy and practice of Defendant Siordia, as supervisor, to fail to train, "weed and screen out" officers who attack with deliberate indifference. (*Id.*)

Based on the foregoing, Plaintiff asserts claims for violations of the First, Eighth, and Fourteenth Amendments; conspiracy to violate civil rights; assault and battery; intentional infliction of emotional distress; and malicious abuse, extortion and terroristic threats. (*Id.*, at 2, 10–12.)

///

///

Plaintiff seeks compensatory and exemplary damages, pre- and post-judgment interest, injunctive relief, a jury trial, and such additional relief as the Court deems just and proper. (*Id.*, at 13–14.)

## III. STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)). To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements" are insufficient to defeat a motion to dismiss. *Id.* (quotations omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV. DISCUSSION

### A. Section 1983

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any

citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

1. Eighth Amendment Excessive Force

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment."[3] *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). In order to state an Eighth Amendment claim for excessive force, a plaintiff must allege sufficient facts to satisfy a two-prong test: (1) an objective standard—"the alleged wrongdoing was objectively harmful enough to establish a constitutional violation"; and (2) a subjective standard—"a sufficiently culpable state of mind." *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

The objective component is contextual—that is, it depends upon the claim at issue—and also is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[A] prisoner asserting an Eighth Amendment claim 'must objectively show that he was deprived

[3] The Complaint asserts claims pursuant to both the Eighth and Fourteenth Amendments. (*See* Compl, at 2.) However, the Fourteenth Amendment's Due Process Clause protects pretrial detainees from excessive force, while the Eighth Amendment's Cruel and Unusual Punishment Clause applies to convicted prisoners. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016).

of something 'sufficiently serious.'" *Bearchild*, 947 F.3d at 1141 (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)). "That objective standard remains constant, but what constitutes a sufficiently serious deprivation may evolve as 'the basic mores of society change.'" *Bearchild*, 947 F.3d at 1141 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008)).

"[T]he subjective inquiry for excessive force claims 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Bearchild*, 947 F.3d at 1140 (quoting *Hudson*, 503 U.S. at 6). Five factors are considered in making this determination: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028–29 (9th Cir. 2013) (quoting *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)). When weighing the merits of excessive force claims, "prison staff should be 'accorded wide-ranging deference.'" *Bearchild*, 947 F.3d at 1140 (quoting *Wood v. Beauclair*, 692 F.3d 1041, 1050 (9th Cir. 2012)).

a. *Defendants Day and Cable*

Here, the Complaint alleges that on February 24, 2019, Plaintiff was approached by two correctional officers at his cell "to step out and cuff up"; Plaintiff did as instructed without hesitation. (Compl., at 4.) Plaintiff was escorted to the program office. (*Id.*) In response to Plaintiff's queries, Defendant Day explained that officers had been notified that Plaintiff had a confidential enemy on the yard, and Plaintiff was going to "ad seg" pending investigation. (*Id.*) After Plaintiff asked to speak to a Sergeant, he was told to shut up, his face was slammed against the wall outside the program office, his arms—which were in handcuffs behind his back—were pushed all the way up behind him, his thumb was pulled back into a restraint

hold, and Plaintiff's thumb snapped under the pressure applied to his wrist. (*Id*., at 5.) Plaintiff did not resist, and was taken to the ground where he became unconscious from the pain. (*Id*., at 6.) Defendant Cable woke Plaintiff up by jumping on Plaintiff's back and putting his knee on Plaintiff's shoulder, which caused Plaintiff extreme pain and made a "very big" dark purple bruise on his left shoulder. (*Id*.)

The allegations regarding this incident potentially could state an Eighth Amendment excessive force claim. However, these allegations mainly are in passive voice, and describe the effects of the actions on Plaintiff, rather than naming the individuals who took the particular actions. Currently, the only allegation against Defendant Day is that he responded to Plaintiff's question, which is not sufficient to state an Eighth Amendment claim. *See*, *e.g.*, *MacFalling v. Nettleton*, No. CV 17-02399 SVW (AFM), 2017 U.S. Dist. LEXIS 130095, at *22–23 (C.D. Cal. Aug. 15, 2017) (holding that words alone do not violate the Eighth Amendment). Plaintiff should allege: (1) the individuals who escorted him to the program office; (2) the individuals who took each specific action against Plaintiff; and (3) each action taken by Defendants Day and Siordia.

If Plaintiff files an amended complaint with Eighth Amendment excessive force claims against Defendants Day and Siordia, he must correct these deficiencies or risk dismissal of such claims.

b. *Defendants Gastelo and Siordia*

"[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* liability." *Iqbal*, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her

personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Starr*, 652 F.3d at 1207–08 (alteration in original) (quotation marks and citation omitted). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration in original) (quoting *Starr*, 652 F.3d at 1208). 'Therefore, the claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

Here, the Complaint alleges that: (1) it was the policy and practice of Defendant Gastelo to employ certain correctional officers, including Defendants Day, Cable, and Siordia, to cover up the use of excessive force; and (2) it was the policy and practice of Defendant Siordia, as supervisor, to fail to train, "weed and screen out" officers who attack with deliberate indifference. (Compl., at 10.) These conclusory allegations are "unadorned," "naked assertions" and "labels and conclusions" that lack any specific factual allegations, and are not sufficient to state Eighth Amendment excessive force claims against Defendants Gastelo and Siordia. *See Iqbal*, 556 U.S. at 678; *see Keates*, 883 F.3d at 1243 (affirming dismissal of

supervisory liability claim based on conclusory and speculative allegations); *see also Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (concluding that "conclusory allegations" that a supervisory defendant "directed" other defendants, without factual assertions to support the allegation, were insufficient to defeat a motion to dismiss).

For these reasons, Plaintiff's Eighth Amendment excessive force claims against Defendants Gastelo and Siordia fail. If Plaintiff files an amended complaint with Eighth Amendment claims against Defendants Gastelo and Siordia, he must correct these deficiencies or risk dismissal of such claims.

2. First Amendment Retaliation

Prisoners have a First Amendment right to file prison grievances, and a First Amendment right to be free from retaliation for doing so. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, circumstantial evidence—such as suspect timing, inconsistent determinations based on the same evidence, and oral statements—may suffice to infer retaliatory intent. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). A plaintiff bears the initial burden of showing that the exercise of his First Amendment rights was a "substantial" or "motivating" factor behind the defendant's conduct. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S.

///

274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989).

The Complaint alleges that immediately after Plaintiff was beaten on February 24, 2019, Defendant Siordia approached Plaintiff and told him to sign a chrono to say that nothing happened, and that Defendant Siordia tried to "extort" Plaintiff into silence by threats of another beating. (Compl., at 6–7.) The Complaint also alleges that after Plaintiff filed a 602 grievance regarding the excessive force on February 26, 2019, Defendant Siordia made threats of additional and excessive time in "ad seg" and conducted frequent pat downs and cell searches of Plaintiff. (*Id*., at 7–8.) Making all inferences in Plaintiff's favor, these allegations potentially are sufficient to state a First Amendment retaliation claim against Defendant Siordia.

3. Conspiracy to Violate Civil Rights

A conspiracy claim involving Section 1983 requires allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1540–41 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am.*, 865 F.2d at 1541). This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir. 1999). A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of conspiracy. *Id.* (quoting *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991)). Conclusory allegations of conspiracy to violate constitutional rights are insufficient to state a Section 1983 claim. *See Burns v. County of King*,

883 F.2d 819, 821 (9th Cir. 1989). In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See Thornton v. City of St. Helens,* 425 F.3d 1158, 1168 (9th Cir. 2005). A conspiracy claim requires "an actual deprivation of . . . constitutional rights." *Hart v. Parks,* 450 F.3d 1059, 1071 (9th Cir. 2006).

Here, the Complaint fails to state a conspiracy claim because it does not allege specific facts of an agreement or meeting of the minds to violate Plaintiff's constitutional rights. Without any supporting facts, the Complaint simply asserts a claim for conspiracy to violate civil rights. (Compl., at 10.) "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns*, 883 F.2d at 821.

For these reasons, Plaintiff's Section 1983 conspiracy claim fails. If Plaintiff includes a conspiracy claim in any amended complaint, Plaintiff must correct these deficiencies or risk dismissal of such claim.

**B. State Law Claims**

Before commencing a lawsuit against a California state or local public entity or its employee based on tort liability or for any claim for money or damages, the Government Claims Act requires a plaintiff to first present a written claim to the public entity. *See Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014); *see also City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007). Claims for personal injury and property damages must be presented within six months after accrual; all other claims must be presented within one year. *City of Stockton*, 42 Cal. 4th at 738. A plaintiff cannot file a lawsuit until the written claim has been acted upon, or deemed rejected, by the board of the public entity. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). "[S]ubmission of a claim to a public entity pursuant to [the Government Claims Act] 'is a condition precedent to

a tort action and the failure to present the claim bars the action.'" *Id.* at 1240 (quoting *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989)); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (holding that plaintiff's pendent state law tort claims against both the individual and public entity defendants are barred unless he presented them in compliance with Government Claims Act before filing suit). "A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists." *Gong*, 226 Cal. App. 4th at 374; *see also Bodde*, 32 Cal. 4th at 1243 ("[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action.").

The Complaint does not allege that Plaintiff presented any potential state claims in compliance with the Government Claims Act, or that he was excused from the claim presentation requirement. Thus, the Complaint does not sufficiently plead any state law claims. If Plaintiff includes any state law claims in any amended complaint, he must state facts showing that he presented or was excused from presenting his claim in accordance with the Government Claims Act, or face dismissal of his state law claims.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the Complaint **WITH LEAVE TO AMEND**. Plaintiff may have another opportunity to amend and cure the deficiencies given his *pro se* status. Plaintiff is **ORDERED** to, within sixty days after the date of this Order, either: (1) file a First Amended Complaint ("FAC"), or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a FAC.

///

The FAC must cure the pleading defects discussed above and shall be complete in itself without reference to the Complaint. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the FAC again. Plaintiff shall not include new Defendants or new allegations that are not reasonably related to the claims asserted in the FAC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a FAC, or timely advise the Court that Plaintiff does not intend to file a FAC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a strike under 28 U.S.C. § 1915(g). Instead, Plaintiff may request voluntary

///

dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). A Notice of Dismissal form is attached for Plaintiff's convenience.

Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: August 3, 2020

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal